IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Sandra W. Robertson, )<br>　　　　　　　Plaintiff, )<br>　　vs. )<br>Michael J. Astrue,<br>Commissioner of Social Security, )<br>　　　　　　　Defendant. ) | Civil Action No. 6:10-597-HMH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

　　　　This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

　　　　The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

　　　　The plaintiff filed her application for disability insurance benefits (DIB) in November 2005, alleging that she became unable to work on August 10, 2005. The application was denied initially and on reconsideration by the Social Security Administration. On June 26, 2006, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her attorney, and a vocational expert appeared on November 13, 2008,

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

considered the case *de novo*, and on February 17, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on January 21, 2010.  The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> (2)    The claimant has not engaged in substantial gainful activity since August 10, 2005, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)    The claimant has the following severe impairments: fibromyalgia, depression, anxiety, degenerative disc disease, and scoliosis of the lumbar spine (20 CFR 404.1521 *et seq*.).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1566(c). The claimant can lift 50 pounds occasionally and 25 pounds frequently. She can sit for two hours, and stand/walk six hours in an eight hour day. The claimant is limited to simple, routine, repetitive tasks. She does not have postural, manipulative, communicative, or environmental limitations.
>
> (6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)    The claimant was born on November 25, 1958 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> (8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

2

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from August 10, 2005 through the date of this decision (20 CFR 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."   42 U.S.C. §423(a).   "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of

3

Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

4

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### **EVIDENCE PRESENTED**

The record reveals the plaintiff was born in November 1958 (Tr. 84). She has a high school education (Tr. 123) and worked in the relevant past as a counselor (Tr. 111-16, 119). The plaintiff alleged that she became disabled on August 10, 2005, when she was 46 years old, because of fibromyalgia (Tr. 118). She last worked on August 10, 2005, the date she alleged that she became disabled (Tr. 111).

*Amir Agha, M.D.*

In 2002, approximately three years before the plaintiff's alleged onset of disability date, Dr. Agha, a rheumatologist, assessed the plaintiff with fibromyalgia and polyarthralgia. Dr. Agha found that the plaintiff had normal range of motion; intact reflexes; no weakness; no clubbing, cyanosis, or edema in her extremities; and tenderness "around the fibromyalgia tender points." Dr. Agha found that the plaintiff had "chronic pain without significant objective findings." He reported that her blood tests, other than some mild anemia, were normal and showed no positive rheumatoid factor. Dr. Agha prescribed medications and encouraged the plaintiff to do range of motion exercises (Tr. 212-13).

5

***Roslyn Harris, M.D.***

Dr. Harris, one of the plaintiff's treating physicians from January 2002 through January 2008, reported essentially normal findings on physical examination of the plaintiff, including: no muscle or joint pain; no weakness, stiffness, swelling or inflammation; no restriction of motion, cramping, or atrophy; intact gait and station; normal posture; full range of motion, strength, and tone in her spine, ribs, pelvis, and extremities; no misalignment, tenderness, edema or varicosities in her extremities; intact cranial nerves; normal sensation; and symmetrical and mildly reduced (2+/4+) deep tendon reflexes (Tr. 175-78, 186, 221, 226-27, 229-31, 261-62). Dr. Harris also found that the plaintiff, from a psychiatric standpoint, was coping well (Tr. 185, 220); she had "no abnormalities" in mood, affect, behavior, coping skills, or sleep pattern (Tr. 177); and she was oriented, with normal memory and appropriate judgment, mood, and affect (Tr. 186, 221, 231, 261).

Dr. Harris noted the plaintiff's complaints of muscle and joint pain (Tr. 261). She assessed the plaintiff with joint pain and muscle aches, prescribed pain medication, and referred her to a rheumatologist (Tr. 190, 227, 263-64).

In November 2005, Dr. Harris completed a long-term private disability benefits questionnaire for the plaintiff, in which she opined that the plaintiff could not work as of October 29, 2005, because of pain and fatigue. Dr. Harris opined that the plaintiff could not lift any weight and that she could sit, walk, and/or stand two hours at one time; never bend or stoop; occasionally grasp and reach; and could not perform fine manipulation with her hands. Dr. Harris stated that the plaintiff was ambulatory and had no mental limitations. Dr. Harris stated that she was unable to determine the plaintiff's prognosis or when the plaintiff could return to work (Tr. 258-59).

In February 2006, Dr. Harris completed a "fibromyalgia residual functional capacity questionnaire." Dr. Harris opined that since 2004 the plaintiff:

6

• experienced multiple tender points, chronic fatigue, morning stiffness, numbness and tingling, anxiety, depression, and severe pain in her spine, shoulders, arms, hands, fingers, hips, legs, knees, ankles and feet (Tr. 196-97);

• was incapable of even "low stress" jobs (Tr. 197);

• became drowsy because of her medications (Tr. 197);

• could walk one block without rest or severe pain; sit 30 minutes at one time before needing to get up; and stand five minutes at a time before needing to sit down or walk around, etc.;

• could sit, stand, and walk no more than two hours each in an eight-hour workday (Tr. 198);

• needed to walk 10 minutes every hour and work at a job that permits shifting at will, unscheduled breaks, and elevating her leg with prolonged sitting (Tr. 199);

• could never lift or carry over 10 pounds (Tr. 199);

• could rarely twist, stoop (bend), crouch/squat, climb ladders or stairs, (Tr. 199);

• had significant limitations with reaching, handling, and fingering (Tr. 200); and

• experienced "good days" and "bad days" (Tr. 200).

Dr. Harris further opined that the plaintiff's impairments could be expected to last at least 12 months and that the plaintiff was not a malingerer (Tr. 196).


**Josette J. Johnson, M.D.**

Dr. Johnson, a rheumatologist who treated the plaintiff from October 2005 through January 2007, reported that the plaintiff complained of constant symptoms and pain at a level of 10, on a scale of 1-10, with 10 being the worst pain. Dr. Johnson reviewed the plaintiff's laboratory tests and x-rays of her lumbar and cervical spines. She assessed the plaintiff with generalized pain syndrome, mild degenerative changes of the cervical spine,

mild scoliosis of the lumbar spine, and a right knee cyst.  Dr. Johnson prescribed "physical therapy in order to reduce pain and improve function" (Tr. 188).

In November 2005, Dr. Johnson also completed a long-term private disability benefits questionnaire for the plaintiff, in which she opined that the plaintiff could frequently lift zero pounds and never lift more than 10 pounds; walk/stand zero hours at one time, but up to three hours in an eight-hour work day; sit one hour at a time, up to four hours in an eight-hour workday; occasionally bend, stoop, grasp, and reach; and had no problems with fine manipulation with both hands.  Dr. Johnson stated that the plaintiff was ambulatory and displayed normal mental and cognitive status.  Dr. Johnson stated that she did not advise the plaintiff to stop working and that she was unable to determine the plaintiff's prognosis (Tr. 193-94).

In December 2005, Dr. Johnson noted the plaintiff's complaints of muscle aches, chest pain, depression, and weight loss.  Dr. Johnson found that the plaintiff had multiple tender points.  She assessed the plaintiff with polyarthralgia and adjusted her medications (Tr. 238).

Over three months later, in March 2006, the plaintiff returned to Dr. Johnson for followup and reported continued fatigue and generalized soreness.  Dr. Johnson reported the same physical examination findings and impressions as those she reported in November 2005.  She adjusted the plaintiff's medications (Tr. 236).

In January 2007, the plaintiff returned to Dr. Johnson complaining of generalized pain, but stated that her medications were helpful and did not cause nausea, sedation, or lightheadedness.  Dr. Johnson reported the same physical examination findings and impressions as those she reported in November 2005 and in March 2006.  She adjusted the plaintiff's medications and discussed the possibility of the plaintiff participating in an aquatic exercise program (Tr. 257).

**Carolina Cardiology Consultants**

On January 20, 2006, the plaintiff had a cardiac evaluation for her complaints of chest pain and fatigue. Her physical examination yielded essentially normal results, including normal gait and station, normal back alignment and mobility; and normal muscle tone and strength. Results of a stress test and echocardiogram were also within normal limits (Tr. 201-04).

**Joseph K. Hammond, Ph.D.**

On April 25, 2006, the plaintiff underwent a mental status examination by Dr. Hammond, a psychologist. The plaintiff told Dr. Hammond that she had memory problems and frequently used sticky notes as reminders. The plaintiff reported a limited daily routine because of pain. She stated that she limited her driving and that her ability to cook and tend to her personal needs and household chores depended upon her symptoms. The plaintiff stated that she got along well with her husband and others in general. Dr. Hammond observed that the plaintiff "could sit, rise, and ambulate without assistance"; she moved freely without use of a cane; her manner of dress and hygiene were appropriate; her thinking "was expressed in a relevant, coherent, and goal-directed manner"; she spoke with normal tone, rate, and volume; and she was pleasant and cooperative. Dr. Hammond found that the plaintiff "maintained her train of thought well" and "was able to understand, remember, and execute simple instructions" during the interview. Dr. Hammond's diagnostic impression was possible ("rule-out") "somatic contribution to pain disorder" and "adjustment disorder with depressed mood in response to physical health status" (Tr. 239-41).

***Renuka R. Harper, Ph.D.***

      Dr. Harper, a consulting psychologist, reviewed the plaintiff's medical records and determined that the plaintiff did not have a severe mental impairment; that her mental condition did not meet or equal the requirements of a listed impairment; and that her affective and somatoform disorders, including possible depression and adjustment disorder, caused no limitations in social functioning, no episodes of decompensation, and no more than mild limitations in activities of daily living and in maintaining concentration, persistence, or pace. Dr. Harper concluded that the plaintiff's mental symptoms imposed no more than minimal limitations on her mental functioning (Tr. 243-55).

***Plaintiff's Testimony***

      The plaintiff testified that she lived with her husband (Tr. 23). She began experiencing "chronic pain all over" in 2002 (Tr. 25). She last worked in August 2005 as a counselor; she left that job because she was in chronic pain and very tired, with no energy (Tr. 25). The plaintiff was diagnosed with fibromyalgia and treated with medication that eased but did not eliminate her pain and other symptoms (Tr. 28). The plaintiff stated that her hips and knees gave away and caused her to fall, so she used a cane (Tr. 28, 31). She also said that medication helped her depression and anxiety (Tr. 29-30). Her high blood pressure was controlled with medication (Tr. 32), and that she did not take any medication for her back pain (Tr. 31). The plaintiff stated that she could walk about four minutes, stand about 10 minutes, and sit for 10 to 15 minutes, each at one time, before needing to change positions (Tr. 33). She said she could not lift anything (Tr. 33) and that her fingers were stiff and sometimes were numb (Tr. 29). The plaintiff further stated that she liked to fish but had no other hobbies; she drove, but "not often"; she "rarely" went to the grocery store, she went to Wal-Mart and attended church "now and then," she read and watched television; and she spent time with her family (Tr. 34-37), but that she spent most of her time in bed

or sitting in a chair (Tr. 38-39). Finally, the plaintiff stated that she did not make beds, cook, wash dishes, clean, do laundry, vacuum, or perform any other household chores or any yard work (Tr. 37-38), and said that her husband and daughter performed all of these chores (Tr. 37-38). The plaintiff reported constant pain, memory problems, trouble sleeping, and the need to take two hour naps daily (Tr. 39).

### Vocational Expert Testimony

Vocational expert Roy Sumpter reviewed the evidence and testified that the plaintiff's past relevant work as a counselor was skilled and required medium exertion (Tr. 40-42). The ALJ asked the vocational expert to assume an individual of the plaintiff's age, with the plaintiff's education, work history, and the residual functional capacity to perform "simple routine and repetitive tasks" requiring medium exertion (Tr. 43). The vocational expert responded that the individual could not perform the plaintiff's past relevant work, but could perform other jobs, such as dining room attendant and kitchen helper; that 86,000 of these jobs existed in South Carolina; and that his testimony as to this issue was consistent with the *Dictionary of Occupational Titles* (*DOT*), U.S. Dept. of Labor, (4th ed. 1991) (Tr. 43-45). The vocational expert testified that a person with all of the limitations the plaintiff alleged, or with all of limitations in the opinions expressed by Drs. Harris and Johnson, could not perform any work (Tr. 45-46).

## ANALYSIS

The plaintiff was 49 years old at the time of the hearing before the ALJ. She alleges disability commencing August 10, 2005, due to fibromyalgia. The plaintiff has a high school education and past relevant work as a counselor. The ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform a range of unskilled work requiring no more than medium exertion. The plaintiff argues that the ALJ's decision is not

supported by substantial evidence and the ALJ erred by: (1) failing to properly evaluate the opinions of her treating physicians, Drs. Harris and Johnson, and (2) failing to properly consider and evaluate her subjective complaints.

### Treating Physicians

The plaintiff first argues that the ALJ failed to properly evaluate the opinions of her treating physicians, Drs. Harris and Johnson. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the Listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p, 1996 WL 374188, requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. *Id.* at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not
> well-supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other
> substantial evidence in the case record means only that the
> opinion is not entitled to "controlling weight," not that the

> opinion should be rejected.  Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in [20 C.F.R. § 416.927].  In many cases,
> a treating source's medical opinion will be entitled to the
> greatest weight and should be adopted, even if it does not meet
> the test for controlling weight.

*Id.* at *4.

Dr. Harris, a family practice doctor, treated the plaintiff for over seven years. As described above, in November 2005, Dr. Harris completed a long-term private disability benefits questionnaire for the plaintiff, in which she opined that the plaintiff could not work as of October 29, 2005, because of pain and fatigue.  Dr. Harris opined that the plaintiff could not lift any weight and that she could sit, walk, and/or stand two hours at one time; never bend or stoop; occasionally grasp and reach; and could not perform fine manipulation with her hands.  Dr. Harris stated that the plaintiff was ambulatory and had no mental limitations.  Dr. Harris stated that she was unable to determine the plaintiff's prognosis or when the plaintiff could return to work (Tr. 258-59).

In February 2006, Dr. Harris completed a "fibromyalgia residual functional capacity questionnaire."  Dr. Harris opined that since 2004 the plaintiff:

> • experienced multiple tender points, chronic fatigue, morning
> stiffness, numbness and tingling, anxiety, depression, and
> severe pain in her spine, shoulders, arms, hands, fingers, hips,
> legs, knees, ankles and feet (Tr. 196-97);
>
> • was incapable of even "low stress" jobs (Tr. 197);
>
> • became drowsy because of her medications (Tr. 197);
>
> • could walk one block without rest or severe pain; sit 30
> minutes at one time before needing to get up; and stand five
> minutes at a time before needing to sit down or walk around,
> etc.;
>
> • could sit, stand, and walk no more than two hours each in an
> eight-hour workday (Tr. 198);

13

• needed to walk 10 minutes every hour and work at a job that permits shifting at will, unscheduled breaks, and elevating her leg with prolonged sitting (Tr. 199);

• could never lift or carry over 10 pounds (Tr. 199);

• could rarely twist, stoop (bend), crouch/squat, climb ladders or stairs, (Tr. 199);

• had significant limitations with reaching, handling, and fingering (Tr. 200); and

• experienced "good days" and "bad days" (Tr. 200).

Dr. Harris further opined that the plaintiff's impairments could be expected to last at least 12 months and that the plaintiff was not a malingerer (Tr. 196).

The ALJ gave Dr. Harris' opinion "little weight," stating that the assessments were "unduly restrictive and not substantiated with objective findings. The assessments reflect the claimant's subjective complaints" (Tr. 15).

Dr. Johnson is a rheumatologist who treated the plaintiff from October 2005 through January 2007. In November 2005, Dr. Johnson completed a long-term private disability benefits questionnaire for the plaintiff, in which she opined that the plaintiff could frequently lift zero pounds and never lift more than 10 pounds; walk/stand zero hours at one time, but up to three hours in an eight-hour work day; sit one hour at a time, up to four hours in an eight-hour workday; occasionally bend, stoop, grasp, and reach; and had no problems with fine manipulation with both hands. Dr. Johnson stated that the plaintiff was ambulatory and displayed normal mental and cognitive status. Dr. Johnson stated that she did not advise the plaintiff to stop working and that she was unable to determine the plaintiff's prognosis (Tr. 193-94).

The ALJ gave Dr. Johnson's assessment "little weight," stating it was "not substantiated with objective findings and . . . largely based on the claimant's subjective complaints" (Tr. 14).

14

Evidence in Dr. Harris' treatment notes that supports her assessment of the plaintiff's limitations includes the following:

> • On January 9, 2002, the plaintiff first saw Dr. Harris and complained that all her joints ached, with her hands aching the worst. She said she sometimes had to be carried by her husband due to knee pain and that her knees and fingers would swell and feel stiff. Dr. Harris noted joint inflammation and restriction as well as swelling and tenderness in her hands (Tr. 170-72).

> • On March 19, 2003, Laura Hunt, an associate of Dr. Harris, saw the plaintiff and noted headaches and chest pain, as well as depressive symptoms including sleep problems, mood swings, high irritability, malaise, and increased stress (Tr. 167-69).

> • On July 28, 2004, the plaintiff complained to Dr. Harris of "nearly unbearable" joint pain as well as numbness in her left leg and fatigue. Dr. Harris noted trapezius tenderness and multiple trigger points. A C-spine x-ray performed on this date showed mild spurring and narrowing at C5-6 as well as loss of lordosis and scoliosis (Tr. 164-66).

> • On November 17, 2004, Dr. Harris noted muscular pain.

> • On August 10, 2005, Dr. Harris documented "multiple complaints" and "joint and muscle pain." At this visit the plaintiff had objective symptoms of an itchy burning rash, swollen joints in her fingers, bleeding gums, and a low grade fever. She also complained of muscle achiness, fatigue, back pain and memory problems.

> • On October 27, 2005, Dr. Harris saw the plaintiff for "severe 8/10 pain" and told her she needed to see her rheumatologist later in the week. Dr. Harris reported that the plaintiff said that it hurts her to stand, walk, or move.

> • During this time the plaintiff was prescribed such medications as Lortab, Ultram, Flexeril, and Lyrica (pl. brief at 5).

Evidence in Dr. Johnson's treatment notes that supports her assessment of the plaintiff's limitations includes the following:

> • The plaintiff has lost range of motion with a decrease in her grip.

15

- In the cervical spine, she has rotation to 50° to the left, extension to less than 5°, lateral flexion to 5 degrees to the right and left and anterior flexion to 15° with significant discomfort.

- In the thoracic spine there is diffuse tenderness on palpation.

- In the lumbar spine there is diffuse tenderness on palpation and she has anterior flexion to 40°, extension to 5° and lateral flexion to 20 degrees to the right and left with significant discomfort.

- On the chest wall, there is tenderness on palpation throughout.

- In the hands, she is tender in all of her joints and between her joints.

- In her wrists, there is tenderness on palpation and with range of motion.

- In her elbows, there is tenderness diffusely on palpation bilaterally.

- In her shoulders, there is diffuse tenderness on palpation bilaterally.

- In her hip bursa, there is bilateral tenderness.

- In her knees, there is diffuse tenderness on palpation and with full range of motion.

- In her ankles, there is tenderness bilaterally.

- In her feet, there is tenderness across the MTP joints, arches, and heels bilaterally.

- There is tenderness to digital palpation at the occiput, trapezius, supraspinatus, second rib, lateral epicondyle, knees, greater trochanter and gluteal area bilaterally.

(Pl. brief at 4; Tr. 187-94, 236-38, 257). Dr. Johnson stated on November 9, 2005, "Essentially, she hurts everywhere she is touched" (Tr. 188). On January 11, 2007, Dr. Johnson stated, "She has multiple tender spots" and observed that the plaintiff used a cane to get around.

The Commissioner argues that the doctors' opinions are inconsistent with their objective findings that the plaintiff had full range of motion, normal neurological examination, no muscle atrophy, and no loss of sensation (def. brief. at 16-17). However, as argued by the plaintiff, there is no evidence that such symptoms are indicia of fibromyalgia. *See Malloy v. Astrue*, 604 F. Supp.2d 1247, 1249 (S.D. Iowa 2009) (In the opinion of the Court this is simply the ALJ's thinly disguised attempt to substitute his opinion for that of the doctor. . . . Furthermore, there is no evidence that muscle atrophy, decreased range of motion, muscle weakness or loss of sensation are indicia of fibromyalgia.") (citations omitted).

This court agrees with the plaintiff that the ALJ did not properly evaluate the opinions of these two treating physicians, both of whom gave very similar RFCs for the plaintiff. In rejecting their opinions, the ALJ stated:

> On April 25, 2006, Dr. Joseph Harris performed a consultative psychological evaluation. She reported making simple meals, reading, going to church occasionally, and getting along with others. The claimant was diagnosed with a possible somatic contribution to a pain disorder, and a possible adjustment disorder with depressed mood. The claimant was able to understand, remember, and carry out simple instructions. her restrictions were pain, and not psychologically based (Exhibit 12F).

> I note that the consultative physician, Dr. Harris, submitted a detailed report which included a clinical interview and observations. I find that the examination was thorough and consistent with the evidence of record. I will consider this report in the evaluation of disability and give it substantial weight

(Tr. 15).

The "Dr. Harris" to whom the ALJ refers is presumably Joseph Hammond, Ph.D., who performed the psychological consultative exam cited by the ALJ. As noted by the plaintiff, there was no physical consultative medical evaluation conducted on her at all, much less one that refutes the physical limitations described by her treating physicians.

17

The ALJ does not cite evidence – and certainly no "substantial evidence" – in the medical record that is inconsistent with the findings of these two treating physicians. Further, as argued by the plaintiff, the ALJ leapt from not giving controlling weight to the opinions to giving them little weight. Upon remand, the ALJ should be instructed to evaluate the opinions of the treating physicians in accordance with the above-cited law.

### Subjective Complaints

The plaintiff further argues that the ALJ failed to properly evaluate her subjective complaints. This court agrees. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .
> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear

18

to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1)    the individual's daily activities;
>
> (2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)    factors that precipitate and aggravate the symptoms;
>
> (4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

With regard to the plaintiff's credibility, the ALJ concluded that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 15). He further found that the plaintiff's testimony was

> not fully credible concerning the severity of her symptoms and the extent of her limitations. Neither the severity nor the extent is supported by the objective medical evidence of record. The plaintiff testified to pain throughout, but treatment notes show some relief with Ultram. The [plaintiff] also testified to depression and anxiety, but admitted to Dr. Johnson that she did not take Trazadone as prescribed. . . Despite her allegations of pain, the [plaintiff] is able to sustain concentration

19

> to read and watch television programs. . . .  She is also able to
> visit with family, occasionally go to church, and go to the
> grocery store when needed.

(*Id.*)

The plaintiff argues that, having found she had impairments capable of producing her symptoms, the ALJ erred by considering objective medical findings and weighing those findings against her complaints of disabling pain (pl. brief at 7-9).  In support of her position, she relies on *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), in which a Fourth Circuit Court of Appeals panel held, "[h]aving met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day."  453 F.3d at 565.  However, what the plaintiff fails to note is that the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'"  *Id.* at 564 (quoting SSR 90-1p).  The court's point in *Hines* was that the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is not determinative of the outcome.  *See id.* at 565.

In *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), the court stated:

> This is not to say, however, that objective medical evidence and
> other objective evidence are not crucial to evaluating the
> intensity and persistence of a claimant's pain and the extent to
> which it impairs her ability to work. They most certainly are.
> Although a claimant's allegations about her pain may not be
> discredited solely because they are not substantiated by
> objective evidence of the pain itself or its severity, they need
> not be accepted to the extent they are inconsistent with the
> available evidence, including objective evidence of the
> underlying impairment, and the extent to which that impairment
> can reasonably be expected to cause the pain the claimant
> alleges she suffers.

20

*Craig*, 76 F.3d at 595.

Here, the ALJ considered several factors, including inconsistencies between the plaintiff's allegations and the objective medical evidence (Tr. 15).  The ALJ also reasonably considered the plaintiff's daily activities and response to medication (*id.*). However, while the Commissioner cited specific inconsistencies between the plaintiff's allegations and the objective medical evidence in his brief (def. brief at 13), the ALJ did not cite such evidence in his decision (Tr. 15).  *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").  The ALJ cited the opinions of Drs. Harris and Johnson discussed above (Tr. 14-15), which support the plaintiff's subjective complaints, but he did not cite the "objective medical evidence" to which he was referring in his credibility finding (*see* Tr. 15).  Thus, while the ALJ may consider objective medical evidence in addition with other factors in evaluating the intensity and persistence of the plaintiff's subjective complaints, he should cite the evidence upon which he relies so that the court may determine whether his credibility finding is based upon substantial evidence.  Upon remand, the ALJ should be instructed to evaluate the plaintiff's subjective complaints in accordance with the foregoing.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

March 22, 2011                                    s/Kevin F. McDonald
Greenville, South Carolina                United States Magistrate Judge